UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| YURIDIA DE LA CRUZ, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | |
| AFNI, INC., | ) | <u>Jury Demanded</u> |
| | ) | |
| DEFENDANT. | ) | |

## COMPLAINT

Plaintiff, Yuridia De La Cruz, brings this action to secure redress from unlawful credit and collection practices engaged in by Defendant AFNI, Inc. Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").

## VENUE AND JURISDICTION

1. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331, 1337, and 1367.

2. Venue in this District is proper because Defendant does business here.

## PARTIES

3. Plaintiff, Yuridia De La Cruz, ("Plaintiff") is an individual and resident of the State of Illinois, who is a "consumer" as defined at 15 U.S.C. § 1692a(3) of the FDCPA.

4. Defendant, AFNI, INC. ("Defendant") is an Illinois corporation that, from its headquarters in Bloomington, Illinois, acts as a "debt collector" as defined by and within the meaning of 15 U.S.C. § 1692a(6) of the FDCPA, and is engaged in the business of collecting debts in this State where Defendant regularly collects or attempts

to collect defaulted consumer debts owed or due or asserted to be owed or due another and whose principal purpose is the collection of delinquent consumer debts using the mails and telephone.

5. In fact, Defendant was acting as a debt collector as to the delinquent consumer debt it was attempting to collect from the Plaintiff.

6. Defendant is authorized to conduct business in Illinois and maintains a registered agent here. (Exhibit A, Record From Illinois Secretary of State).

7. In fact, Defendant conducts business in Illinois.

8. Moreover, Defendant is licensed as a collection agency in Illinois which has been disciplined by the Illinois Department of Financial and Professional Regulation. (Exhibit B, Record from Illinois Division of Financial and Professional Regulation).

## FACTS

9. On an unknown date before December 2010, Plaintiff defaulted on a disputed debt with Verizon Wireless ("alleged debt").

10. The alleged debt was thereafter assigned, consigned or otherwise transferred to Defendant for the purpose of collection from Plaintiff in the amount of $910.72.

11. Plaintiff thereafter received a letter from Defendant stating in part as follows:

**This account has been acquired by our agency for collection.**

(Exhibit C, Letter from Defendant dated November 22, 2011).

12. Said letter also states:

**This account is for a remaining balance from the original creditor for services associated with the previous telephone number listed below.**

(Exhibit C, Letter from Defendant dated November 22, 2011).

13. The statements from Defendant's letter, referenced above, confused the Plaintiff, and would confuse an unsophisticated consumer as to whether Verizon Wireless, or Defendant, owned the alleged debt at the time the letter was sent.

14. On or around January 13, 2012, Plaintiff received another collection letter from Defendant that states, in relevant part, as follows:

> **Your account 045201409-02 is scheduled to be sent to the credit bureaus for listing on 02-05-2012. You can prevent this action by contacting our offices and resolving the account prior to that date…**

(Exhibit D, Letter from Defendant dated January 6, 2012).

15. On February 8, 2012, Plaintiff sent Defendant a letter via fax number 309-828-0931, which Defendant immediately received, disputing the alleged debt and requesting that Defendant not contact her regarding the alleged debt . (Exhibit E, Letter of dispute sent to Defendant).

16. On March 8, 2012, Plaintiff placed a phone call to the Equifax credit reporting bureau to inquire about the information being reported to Equifax by Defendant, on the subject account. During the pendency of said call with an agent or representative who identified himself as "Raf", Plaintiff was informed that Defendant had been reporting the alleged debt to the Equifax credit reporting bureau since October 2011.

17. Confused by the information that Equifax provided to her as to the date the account was "sent" to the credit bureaus, Plaintiff thereafter, on March 9, 2012, called Defendant to get this information. In the conversation that ensued with Defendant's agent or employee who identified herself as "Teju", Teju could not answer Plaintiff's question

as to the date her account was sent to to Equifax. Teju did, however, attempt to collect the alleged debt from Plaintiff during the conversation by asking Plaintiff to "make a payment" and "set up payment arrangements" on the alleged debt.

18. Plaintiff thereafter again called Equifax, on March 16, 2012, to attempt to determine the date upon which Defendant sent the subject account to Equifax. During the pendency of said call with an agent or representative who identified herself as "Hera", Plaintiff was again informed that Defendant had been reporting the alleged debt to the Equifax credit reporting bureau since October 2011.

19. Upon information and belief, at the time it sent Plaintiff its letter dated January 6, 2012, Defendant had already sent the account to the Equifax credit reporting bureau, and it had been reporting information relating to the alleged debt to Equifax since October, 2011. (Exhibit F, Account tradeline reported on Plaintiff's Equifax credit report).

20. Defendant's representation in its letter dated January 6, 2012 that Plaintiff could prevent the listing of the account tradeline by resolving the account before February 5, 2012 was false, as it had been already reporting information relating to the alleged debt to Equifax well before that date.

21. Defendant's representation in its letter dated January 6, 2012 that Plaintiff could prevent the listing of the account tradeline by resolving the account before February 2, 2012 was material, as resolution of the alleged debt by Plaintiff before the February 2, 2012 "deadline" would not have prevented the alleged debt from being reported, since information relating to the alleged account debt had already been reported, and was damaging Plaintiff's credit, months earlier.

22. Plaintiff owes less than $910.72 to the Defendant, if Plaintiff owes Defendant anything at all.

23. On March 23, 2012, in response to Plaintiff's repeated disputes of the alleged debt, Defendant finally sent the Equifax, Experian, and TransUnion credit reporting agencies a request for deletion of the account associated with the alleged debt.

24. Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard. *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

## COUNT I-VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 *et seq.*

25. Plaintiff incorporates paragraphs 1-24.

26. In its attempts to collect the debt allegedly owed by Plaintiff, Defendant violated the FDCPA, 15 U.S.C. § 1692 in one or more of the following ways:

   a) Defendant violated 15 U.S.C § 1692c(c) when it continued to attempt o collect the alleged debt in March, 2012 after Plaintiff informed Defendant in writing in February, 2012 that she disputes owing the alleged debt;

   b) Defendant violated 15 U.S.C § 1692e when, in January 2012, it deceptively and falsely informed Plaintiff that her account was scheduled to be sent to the credit bureaus on 2-05-2012, after it had already begun reporting said account to the Equifax credit reporting bureau;

   c) Defendant violated 15 U.S.C § 1692e(2) when, in its letter dated November 22, 2011, it failed to inform the Plaintiff as to the identity of the current owner of the alleged debt, creating confusion as to the debt's legal status;

   d) Defendant violated 15 U.S.C § 1692e(2) when it misrepresented the amount of the alleged debt Plaintiff owes;

   e) Defendant violated 15 U.S.C § 1692e(8) when it communicated false credit information to Equifax regarding the amount of the alleged debt;

f) Defendant violated 15 U.S.C § 1692e(10) when, in January 2012, it falsely and deceptively informed Plaintiff that her account was scheduled to be sent to the credit bureaus on 2-05-2012, after it had already begun reporting said account to the Equifax credit reporting bureau;

g) Defendant violated 15 U.S.C § 1692f when, in January 2012, it unfairly informed Plaintiff that her account was scheduled to be sent to the credit bureaus on 2-05-2012, after it had already begun reporting said account to the Equifax credit reporting bureau;

h) Defendant violated 15 U.S.C § 1692f(1) when it unfairly attempted to collect the alleged debt in an amount not authorized by the agreement creating the debt, or permitted by law;

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant, for the following:

a. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k;

b. Actual damages suffered by the Plaintiff;

c. Plaintiff's attorney fees and costs;

d. Any other relief deemed appropriate by this Honorable Court.

## JURY DEMAND

Plaintiff demands trial by jury.

**The Law Office of M. Kris Kasalo, Ltd.**  By: s/ Mario Kris Kasalo
**"A Consumer Protection Law Firm"**  Mario Kris Kasalo
20 North Clark Street, Suite 3100
Chicago, Illinois 60602
tele 312.726.6160
fax 312.698.5054
mario.kasalo@kasalolaw.com